IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ALLERGY RESEARCH GROUP, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>THRILL DEALS LLC,<br><br>        Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT<br><br><br>Case No. 2:21-cv-00380-JNP-JCB<br><br>District Judge Jill N. Parrish |

Plaintiff Allergy Research Group, LLC (ARG) sued Thrill Deals LLC, alleging, among other things, that Thrill Deals had violated its trademark rights associated with its products. Thrill Deals did not answer the complaint, and the clerk of court entered a default certificate. Before the court is ARG's motion for a default judgment. ECF No. 18. ARG does not request an award of damages. Instead, it asks for a broad permanent injunction prohibiting Thrill Deals from selling products bearing ARG's trademarks. The court GRANTS IN PART and DENIES IN PART the motion. Based on the allegations of the complaint, the court determines that ARG is entitled to an injunction, but one that is narrower than the injunction requested.

**FACTUAL BACKGROUND**

"[T]he entry of a default judgment means that the 'defendant admits to [the] complaint's well-pleaded facts and forfeits his or her ability to contest those facts.'" *Equal Emp. Opportunity Comm'n v. Roark-Whitten Hosp. 2, LP*, 28 F.4th 136, 157 (10th Cir. 2022) (Second alteration in original) (citation omitted)). Accordingly, the court recites the relevant facts properly pled in ARG's operative complaint.

ARG manufactures and sells dietary supplements. It sells some of its products through distributors, who are authorized to sell ARG's products either directly to consumers or to resellers authorized by ARG. ARG distributors must sign a contract requiring them to sell ARG products to consumers through approved channels or to resellers who meet certain requirements.

ARG outsources some of its quality control measures to its distributors and resellers by requiring them to inspect all shipments and report any problems. Authorized distributors and resellers must also inspect products prior to sale. ARG requires its distributors and resellers to be familiar with product information, such as expiration dates, and to respond to customer questions both before and after the sale of the product. Authorized distributors and resellers are subject to audits to ensure that ARG's rules are followed.

ARG provides a satisfaction guarantee to all consumers who purchase its products either directly from ARG or from an authorized distributor or reseller. Under this guarantee, a consumer may receive a replacement product or a refund within 60 days of purchase. ARG's satisfaction guarantee does not apply to products purchased from an unauthorized seller.

Thrill Deals is a company that sells products online through Amazon. Thrill Deals is not an authorized distributor or reseller of ARG's products. It nonetheless sold ARG's products on Amazon. ARG alleges that one of its distributors breached its contract by selling its products to Thrill Deals despite the fact that it is not an authorized reseller.

ARG sued Thrill Deals, asserting a number of claims. The only cause of action relevant to the present motion, however, is its claim that Thrill Deals is liable for trademark infringement. ARG contends that Thrill Deals sold non-genuine products bearing its trademark for two reasons. First, ARG asserts that the products are not genuine because it limited its satisfaction guarantee to sales made through authorized distributors and resellers. Thus, consumers who purchased ARG

products from Thrill Deals are not covered by the guarantee. Second, ARG alleges that the products are not genuine because Thrill Deals is not subject to the quality control measures that authorized distributors and resellers must satisfy.

Thrill Deals failed to respond to the complaint, and the clerk of court entered a default certificate against it. ARG filed a motion for a default judgment. The only relief it seeks is a permanent injunction requiring Thrill Deals to stop selling any products bearing ARG's trademark and to destroy or return any ARG products that it has in its possession. Additionally, ARG requests that the permanent injunction include provisions prohibiting Thrill Deals from using its trademarks to advertise on the internet, prohibiting Thrill Deals from destroying, altering, or concealing documents related to the sale of ARG's products, and requiring Thrill Deals to facilitate the removal of ARG's trademarks from internet search engines.

## LEGAL STANDARD

"Once default is entered, 'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.' 'There must be a sufficient basis in the pleadings for the judgment entered.'" *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (citations omitted). "[E]ntry of a default judgment is committed to the sound discretion of the district court . . . ." *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016); *accord* 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2685 (4th ed. 2022) ("[T]he district judge is required to exercise sound judicial discretion in determining whether [a default] judgment should be entered.").

## ANALYSIS

ARG asserted a number of claims against Thrill Deals in its complaint. But it bases its claim for permanent injunctive relief on its trademark infringement cause of action. In support of its request for injunctive relief, ARG cites 15 U.S.C. § 1116(a), which provides that district courts "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." Because § 1116(a) permits, but does not require, injunctive relief, courts must look to traditional equitable principals to determine whether to grant a permanent injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391–92 (2006) (analyzing a statutory authorization for injunctive relief under the Patent Act). Under these well-established principals, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* at 391. "An injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008); *accord eBay*, 547 U.S. at 391 ("The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court . . . .").

In order to determine both the right to injunctive relief and the appropriate scope of any permanent injunction here, the court must analyze ARG's trademark infringement claim and the facts established by Thrill Deal's default. The well-pled facts of the operative complaint establish that Thrill Deals did not use ARG's trademark to sell knockoff goods. Instead, Thrill Deals obtained nutritional supplements manufactured by ARG and sold those supplements outside of

ARG's authorized distribution channels. Generally, a trademark claim against a reseller of goods is barred by the first sale doctrine. Under this doctrine, "the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product[,][r]esale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition." *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1240–41 (10th Cir. 2006) (alterations in original) (citation omitted). "It is the essence of the 'first sale' doctrine that a purchaser who does no more than stock, display, and resell a producer's product under the producer's trademark violates no right conferred upon the producer by the Lanham Act." *Id.* at 1241 (citation omitted). This is because, generally, the resale of a product does not create an "actionable misrepresentation under the statute." *Id.* (citation omitted).

ARG argues that the first sale doctrine does not bar its trademark infringement claim because the goods sold by Thrill Deals deceived consumers because the products were materially different from products sold by authorized resellers. First, it asserts that the products sold by Thrill Deals differed materially from products sold through official channels because ARG excludes products sold by unauthorized resellers from its satisfaction guarantee. Second, ARG contends that the products sold by Thrill Deals are materially different because Thrill Deals is not bound by quality assurance protocols that official distributors and resellers must observe. The court addresses each of these two arguments in turn.

## I.      THE SATISFACTION GUARANTEE

ARG cites *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067 (10th Cir. 2009), in support of its contention that it is entitled to a permanent injunction because it chose not to extend its satisfaction guarantee to products sold by unauthorized resellers, such as Thrill Deals. In that case, the trademark owner sold electronics equipment to authorized

distributors. *Id.* at 1069. In violation of their agreements with the trademark owner, these distributors removed the official serial numbers from the equipment, placed phony serial numbers on the items, and sold the equipment to the defendant, who then resold the equipment to consumers over the internet. *Id.* The trademark owner limited its product warranty to items bearing the original serial number. *Id.* Thus, customers who purchased products from the reseller were deceived into believing that the items were covered by the trademark owner's warranty when, in fact, they were not covered. *Id.* The trademark owner sued the reseller for trademark infringement and moved for a preliminary injunction prohibiting it from selling any of the trademark owner's products that did not bear the original serial number. *Id.* at 1069–70. The district court granted the motion for a preliminary injunction and the reseller appealed. *Id.* at 1070.

On appeal, the reseller argued that the preliminary injunction violated the first sale doctrine. The Tenth Circuit held that the first sale doctrine does not apply "when an alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner." *Id.* at 1072 (citation omitted). This is because "[a] materially different product is not genuine and may generate consumer confusion about the source and the quality of the trademarked product." *Id.* The Tenth Circuit determined that the products sold by the reseller were materially different from the products sold by the trademark owner because they were not accompanied by the manufacturer's warranty. *Id.* at 1073. In so holding, that court rejected the reseller's argument that manufacturers could effectively evade the first sale doctrine by excluding products that are resold from a warranty. The Tenth Circuit observed that "[t]he Lanham Act does not proscribe material differences per se; it proscribes sales and offers for sale that are 'likely to cause confusion, or to cause mistake, or to deceive.'" *Id.* at 1074 (quoting 15 U.S.C. § 1114(a)-(b)). Thus, "[s]o long as resellers of materially different products take the necessary steps to adequately alleviate

6

[consumer] confusion and prevent injury to the trademark's goodwill—by, for example, sufficiently disclosing that the product differs from the originally sold product—those differences will be unlikely to trigger" trademark infringement liability. *Id.* The Tenth Circuit concluded, however, that the district court had not abused its discretion when it found that the reseller did not consistently disclose of the absence of a manufacturer's warranty and that the disclosure was inadequate. *Id.* at 1074–75. Accordingly, the *Beltronics* court affirmed the district court's order granting a preliminary injunction that prohibited the sale of the trademark owner's products. *Id.* at 1075.

Relying on *Beltronics*, ARG argues that the products bearing its trademark sold by Thrill Deals were materially different from products sold through authorized distribution channels. ARG further asserts that because Thrill Deals sold martially different products bearing its trademark, it committed trademark infringement. The court agrees. The Tenth Circuit has established that products sold without a manufacturer's warranty are materially different from products sold with the warranty.[1] Moreover, the operative complaint is bereft of any allegations that Thrill Deals disclosed this material difference to consumers. Accordingly, the court finds that the allegations of the operative complaint are sufficient to establish liability for trademark infringement based on the sale of products not covered by ARG's satisfaction guarantee.

The court concludes, however, that the permanent injunction requested by ARG is overly broad because it prohibits lawful conduct. ARG proposes an injunction permanently enjoining Thrill Deals from reselling products bearing its trademark and requiring Thrill Deals to destroy or

---

[1] Whether differences are material is a question of law for the court. *See Beltronics*, 562 F.3d at 1073; *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 303 (3d Cir. 1998) (cited by *Beltronics*).

return any ARG products it may possess. Such an expansive injunction ignores the holding of *Beltronics*, which provides that parties who resell a manufacturer's products that are materially different from the product sold by the manufacturer do not infringe the manufacturer's trademark rights so long as the reseller adequately discloses the material difference to consumers. The court finds that the injunctive relief requested by ARG would disserve the public interest because it would allow ARG to unilaterally eliminate the first sale doctrine by structuring its satisfaction guarantee so as to preclude all unauthorized secondary sales of its products. In order to avoid the specter of price fixing and anticompetitive behavior caused by such maneuvers, the Tenth Circuit held that resellers of a manufacturer's products can avoid trademark infringement liability through disclosure of material differences. *See Beltronics*, 562 F.3d at 1074.

The court, therefore, exercises its equitable discretion under 15 U.S.C. § 1116(a) to craft a reasonable permanent injunction that protects ARG's trademark rights but does not eliminate the first sale doctrine or unduly burden third-party resellers. The court finds that Thrill Deals can adequately disclose the absence of a satisfaction guarantee on its Amazon storefront to effectively ameliorate customer confusion and damage to the trademark. As discussed in more detail below, the court exercises its discretion to order Thrill Deals to include such a disclosure rather than require it to stop selling ARG's products all together.

## II.  QUALITY CONTROLS

ARG also argues that the products sold by Thrill Deals are materially different from products sold through authorized distribution channels because ARG requires authorized distributors and resellers to abide by measures calculated to ensure the quality of its products. ARG asserts that because Thrill Deals is not required to abide by such measures, the ARG products it sells differ materially in quality from products sold by authorized dealers.

ARG does not cite, and the court has not found, any Tenth Circuit caselaw holding that products sold by authorized resellers subject to quality control protocols are materially different from products sold by unauthorized resellers who are not bound to follow the protocols. But other circuits that have addressed this issue have found that quality controls can create material differences that may lead to liability for trademark infringement. *See*, *e.g.*, *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 244 (2d Cir. 2009); *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 304 (3d Cir. 1998). In this case, the facts alleged in ARG's operative complaint establish that products sold through authorized reseller, which are subject to quality controls, are materially different from the products sold by Thrill Deals, which are not subject to the same quality controls.

Under *Beltronics*, however, a reseller of a manufacturer's goods may avoid liability for trademark infringement if the reseller adequately discloses the material difference to consumers. For the same reasons stated above, the court finds that an injunction requiring disclosure of the fact that the ARG products sold by Thrill Deals are not subject to certain quality controls is preferable to a broader injunction prohibiting all sales of ARG's products.

## III.    OTHER REQUESTS FOR INJUNCTIVE RELIEF

In addition to its request to enjoin the sale of its products, ARG also asks for an injunction prohibiting Thrill Deals from using its trademarks to advertise on the internet and requiring Thrill Deals to facilitate the removal of ARG's trademarks from internet search engines. While a reseller's use of another's trademarks to falsely imply that they are authorized dealers may constitute trademark infringement, *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1241 (10th Cir. 2006), there is no indication that Thrill Deals misused ARG's trademarks to convey such an impression. The motion for default judgment does not cite any facts alleged in the operative complaint that would support this type of trademark infringement claim. Instead, the motion

9

focusses exclusively on Thrill Deals' sale of its products. Without any facts supporting this request for injunctive relief, the court denies this portion of ARG's motion.

Finally, ARG requests an injunction prohibiting Thrill Deals from destroying, altering, or concealing documents related to the sale of ARG's products. But, once again, ARG provides no argument or explanation for this request. Given that ARG is not seeking damages for trademark infringement, it has failed to show why this request for permanent injunctive relief should be granted.

## CONCLUSION

For the reasons stated above, the court GRANTS IN PART and DENIES IN PART ARG's motion for a default judgment. The court denies ARG's request for a permanent injunction prohibiting Thrill Deals from selling products bearing ARG's trademarks and requiring Thrill Deals to return or destroy any ARG products it has in its possession. Instead, the court will enter a permanent injunction requiring Thrill Deals to post in a prominent location on any website offering ARG products for sale the following language in all capital letters:

> THRILL DEALS IS NOT AN AUTHORIZED SELLER OF THIS PRODUCT. THEREFORE, THE PRODUCT IS NOT COVERED BY THE MANUFACTURER'S SATISFACTION GUARANTEE. ADDITIONALLY, THRILL DEALS IS NOT REQUIRED TO ABIDE BY THE MANUFACTURER'S QUALITY CONTROL PROCEDURES, WHICH ARE DESIGNED TO ENSURE THE QUALITY OF THIS PRODUCT.

The court finds that this advisory will adequately alleviate consumer confusion and sufficiently prevent injury to the trademark's goodwill.

The court denies ARG's request for a permanent injunction prohibiting Thrill Deals from using its trademarks to advertise on the internet, requiring Thrill Deals to facilitate the removal of

ARG's trademarks from internet search engines, and prohibiting Thrill Deals from destroying, altering, or concealing documents related to the sale of ARG's products.

DATED September 13, 2022.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

11